UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RAIN CORPORATION, a Nevada corporation, | |
| Plaintiff, | 03:07-CV-00081-LRH-RAM |
| v. | ORDER |
| JYP ENTERTAINMENT, LTD. a Korean limited company, JI-HOON JEONG a/k/a RAIN, an individual, STAR M ENTERTAINMENT, a Korean company, | |
| Defendants. | |

Presently before the court is Rain Corporation's ("Plaintiff") Motion for Preliminary Injunction (# 12[1]). Defendants JYP Entertainment, Ltd., Ji-Hoon Jung a/k/a Rain ("Jung"), and Star Entertainment (collectively, "Defendants") have filed a Response (# 19), and Plaintiff replied (# 35).

**I. Factual Background**

This is a trademark and unfair competition action arising from Jung's use of the word "Rain" to identify himself. Plaintiff is a Nevada corporation in the business of producing and performing musical events featuring its Beatles tribute band called "Rain." Plaintiff has used the

---

[1]Refers to the court's docket number.

1  mark "Rain" since 1975 to identify its musical band and services.  Plaintiff registered the mark
2  "Rain" for entertainment services with the United States Patent and Trademark Office in 1988.
3  Plaintiff has performed in approximately thirty states, most Canadian provinces, Jamaica and on
4  international cruise ships.
5        Defendant Jung is a Korean singer, dancer, model, and actor.  In Korea, throughout Asia,
6  and among Asian-American fans in the United States, Jung is primarily known as "Rain."  Jung
7  adopted the Korean name "Bi" (in Korean script), a Korean word that means "rain," as his stage
8  name.  Since 2004, Jung has starred in several television shows broadcast throughout the world via
9  satellite, cable, and availability on DVD.  Jung began performing in the United States in February
10 of 2004.  In February, 2006, Jung held his first solo concert in the United States at Madison Square
11 Garden.  Jung has recently commenced a tour of the United States as part of his 2006-2007 world
12 tour that began in Korea in October, 2006.
13       As a result of Jung's use of the term "Rain," Plaintiff filed this action.  At this time,
14 Plaintiff is seeking a preliminary injunction preventing Defendants from using the "Rain" mark, or
15 any confusingly similar variation thereof, in conjunction with the sale, offer for sale, promotion,
16 advertising, or provision of any goods or services in the United States.
17 **II.  Legal Standard**
18       The Ninth Circuit uses two alternative tests to determine whether a preliminary injunction
19 should issue.  According to the "traditional test," the equitable criteria for granting preliminary
20 injunctive relief are: (1) a strong likelihood of success on the merits; (2) the possibility of
21 irreparable injury to the plaintiffs if injunctive relief is not granted; (3) a balance of hardships
22 favoring the plaintiffs; and (4) advancement of the public interest.  *Textile Unlimited, Inc. v.*
23 *A..BMH & Co., Inc.,* 240 F.3d 781, 786 (9th Cir.2001) (citing *Los Angeles Mem'l Coliseum*
24 *Comm'n v. Nat'l Football League,* 634 F.2d 1197, 1200 (9th Cir.1980)).  In the alternative, the
25 Ninth Circuit uses a "sliding scale" or balancing test where injunctive relief is available to a party
26

who demonstrates either: (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in its favor. *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013 (9th Cir.2001) (citing *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.,* 204 F.3d 867, 874 (9th Cir.2000)).

**III. Discussion**

In its complaint, Plaintiff asserts causes of action for trademark infringement pursuant to 15 U.S.C. § 1114(a), unfair competition pursuant to 15 U.S.C. § 1125(a), and common law unfair competition and trademark infringement. The test for trademark infringement and unfair competition claims is whether the alleged infringer's use of a mark is likely to cause confusion. *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1080 (9th Cir. 2005) (citing *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994)). "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the market place is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998) (footnote omitted). In determining whether there is a likelihood of confusion, the Ninth Circuit has looked to the following eight non-exclusive factors: strength of the mark, proximity of the goods, similarity of the marks, evidence of actual confusion, marketing channels used, types of goods and the degree of care likely to be exercised by the purchaser, defendant's intent in selecting the mark, and likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) (citing *Sleeper Lounge Co. v. Bell Mfg. Co.*, 253 F.2d 720, 722 (9th Cir. 1958)). However, this list of factors is not a "score-card" and the relative importance of each factor is case specific. *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002). The likelihood of confusion inquiry is inherently factual and usually requires a full record. *Id*. at 902; *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001).

In the case at bar, the court has carefully considered the parties points and authorities along

1 with the evidence presented and concludes that a preliminary injunction is not warranted.  The
2 court's preliminary analysis of the *Sleekcraft* factors indicates that some factors favor Plaintiff
3 while others favor Defendants.  Although Plaintiff has presented sufficient evidence to the court to
4 demonstrate that this case raises serious questions, there is insufficient evidence to demonstrate a
5 strong likelihood of success on the merits or that the balance of hardships tips in Plaintiff's favor.
6 The court reiterates, however, that the likelihood of confusion inquiry is a factual inquiry that
7 generally requires a full record.  *Thane Int'l, Inc.*, 305 F.3d at 902.  Based on the record currently
8 before the court, it appears that the question of whether Jung's use of the term "rain" is likely to
9 cause confusion is ultimately a question of fact that can only be determined by a jury.

10 With regard to the injury asserted by Plaintiff, Plaintiff argues that Defendants use of the
11 word "rain" in the United States will destroy its hard work and investment because it will be forced
12 to explain to the public and music venues that Plaintiff is not the Korean "Rain."  Other than
13 speculation, Plaintiff has provided no evidence that its hard work and investment will be destroyed.
14 Moreover, the prevailing party in a trademark infringement action is entitled, subject to the
15 principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff,
16 and (3) the costs of the action.  15 U.S.C. § 1117(a).  Hence, the harm Plaintiff seeks to avoid is
17 compensable to the extent Plaintiff is successful in this litigation.

18 Similarly, the court finds that in assessing the need for a preliminary injunction, the balance
19 of hardships favors Jung.  If Plaintiff ultimately prevails in this action, the harm it will suffer
20 should no injunction issue is its loss of control over the use of the mark "Rain."  *See Int'l Kennel*
21 *Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1091 (7th Cir. 1988) (citing *James*
22 *Burrough, Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 276 (7th Cir. 1976)).  Beyond this, Plaintiff
23 has yet to provide evidence indicating that it will suffer any actual harm.  Jung, on the other hand,
24 is currently beginning the United States portion of his 2006-2007 World Tour.  Should an
25 injunction issue, Jung will likely incur substantial costs in communicating the name change
26

effectively. *See* (Decl. of Sangbong Byun ¶ 13.) Defendants have invested more than three million dollars in the United States portion of Jung's world tour. *Id*. As part of this promotion, Defendants have prepared concert-related merchandise, such as t-shirts, hats and phone straps that would have to be withdrawn from the marketplace should an injunction issue. *Id.* Finally, it is certainly possible that an injunction would confuse Jung's fans as to whether he is actually performing and cause those fans to return tickets or decline to attend Jung's concerts.

In short, the limited evidence before the court fails to show that Plaintiff has a strong likelihood of success on the merits. Furthermore, there is insufficient evidence of irreparable harm should an injunction not issue. Nonetheless, Plaintiff has raised serious questions with respect to trademark infringement that will likely need to be decided by a jury. Despite the questions that have been raised, an injunction is not appropriate because the evidence before the court at this stage indicates that the balance of hardships favors Defendants.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Preliminary Injunction (# 12) is hereby DENIED.

IT IS SO ORDERED.

DATED this 21st day of June, 2007.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE